UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMELIA STEVERSON,<br><br>Plaintiff,<br><br>v.<br><br>FIRST STUDENT INC.,<br><br>Defendant. | CASE NO. 25-cv-05549-JHC<br><br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment. Dkt. # 33. The Court has considered the materials filed in support of and in opposition to the motion, the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS Defendant's motion and DISMISSES this action with prejudice.

## II
## BACKGROUND

Pro se Plaintiff Amelia Steverson is a former bus driver for Defendant First Student, Inc., first hired in May 2021. *See* Dkt. # 35 (Decl. of Joanne Meek, Defendant's managerial employee) ¶ 4. Defendant's bus drivers select routes through a bidding process based on

seniority. *Id.* ¶ 3. These routes can either be fixed "home-to-school" routes or charter routes. *Id.* Plaintiff drove a home-to-school route for Tacoma Public Schools (TPS, not a party to this action) for the 2022–23 school year. During her employment, she was a member of Teamsters Local Union No. 313, which had a CBA with Defendant. *Id.*

In October 2022, Defendant and TPS reviewed video footage from inside the bus during an investigation into another driver's conduct. *Id.* ¶ 6. During that review, Defendant and TPS observed Plaintiff engaged in conduct such as hugging children, using an earbud to take calls on her phone, and permitting children to misbehave on the bus, such as jumping and standing. *Id.* On November 2, TPS directed that Plaintiff be removed from its routes. *Id.* ¶ 7; Dkt. # 35-4 at 2 (letter from TPS to Defendant). Defendant then discharged Plaintiff on November 7, 2022, citing policy and procedure infractions described in an employee handbook and the CBA. Dkt. # 35 ¶ 7; *see also* Dkt. # 35-5 at 2 (termination letter). Defendant sent Plaintiff a more detailed termination letter on November 18, citing the CBA and identifying the specific handbook provisions she had violated. Dkt. # 35 ¶ 7; Dkt. # 35-6 at 2 (follow-up termination letter).

On December 9, 2022, Plaintiff submitted a grievance through her union. Dkt. # 35 ¶ 8; Dkt. # 35-7 (grievance form) at 2–3. The same day, Defendant reinstated Plaintiff and provided her a "Last and Final Warning" regarding her on-the-job conduct, listing the following "areas of concerns": "Inappropriate Touching," "Cell Phone Usage," "Students Standing While Bus is In Motion" and "Providing Food to Students." Dkt. # 35 ¶ 8; Dkt. # 35-8 (Last and Final Warning letter) at 2. Though Plaintiff was "invited and permitted to bid on any home-to-school routes" except for those associated with TPS, she did not bid on any such routes for more than a year. Dkt. # 35 ¶ 8. Eventually, she drove a route for Clover Park in 2024. *Id.* But on October 31, 2024, she was discharged a second time for job abandonment after failing to report to work for three consecutive days. Dkt. # 35 ¶ 9.

Plaintiff filed a complaint in King County Superior Court, *see* Dkt. # 1-2, and amended it three days later. In her amended complaint, she asserts these claims: Discrimination under Title VII of the Civil Rights Act and the ADA, retaliation under federal and state law, wrongful termination, "Defamation/False Allegations," and "unfair application of policies." *See generally* Dkt. # 1-3 ¶¶ 18–25. Defendant removed the case to this Court, *see generally* Dkt. # 1, and answered the complaint. *See* Dkt. # 7. Following discovery, Defendant now moves for summary judgment. *See generally* Dkt. # 33.

## III
## DISCUSSION

A. Summary Judgment Standards

Summary judgment is appropriate if the evidence viewed in the light most favorable to the nonmoving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The party moving for summary judgment bears the initial burden of showing that there is no genuine dispute as to any material fact and that they may prevail as a matter of law on all claims for which they seek summary judgment. *See Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a factual dispute is "genuine" if "there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *id.*).

If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in its favor. *See Celotex*, 477 U.S.at 324; *see also Anderson*, 477 U.S. at 250. Although a court must draw all "justifiable inferences" in favor of the nonmoving party, "[t]he mere existence of a

scintilla of evidence . . . will be insufficient[,]" and missing facts will not be presumed. *Anderson*, 477 U.S. at 252, 255; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). If the nonmoving party does not meet its burden, the court must grant summary judgment to the movant. *See* Fed. R. Civ. P. 56(a).

B. Analysis

Defendant advances several grounds for the entry of summary judgment on Plaintiff's claims. Plaintiff presents little substantive opposition to the motion and does not appear to address any of Defendant's arguments.[1] *See generally* Dkt. # 36.

1. Plaintiff's federal claims

With respect to her federal claims (Title VII discrimination, retaliation, and ADA discrimination), Defendant argues that Plaintiff failed to exhaust her administrative remedies since she did not file any charge with the Equal Employment Opportunity Commission (EEOC). *See* Dkt. # 33 at 7–8. Plaintiff does not respond to this point and generally asserts that there are issues of material fact precluding summary judgment on all her claims. *See generally* Dkt. # 36.

To bring discrimination or retaliation claims under either Title VII or the ADA, generally, a plaintiff must exhaust their administrative remedies by timely filing a charge before the EEOC. *See E.E.O.C. v. Dinuba Med. Clinic*, 222 F.3d 580, 585 (9th Cir. 2000) ("Title VII actions cannot proceed in federal court unless a charge of discrimination has first been filed with the EEOC."); *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000) ("[a] plaintiff must file a timely charge of discrimination with the EEOC as a prerequisite to maintaining an ADA action."), *overruled on other grounds by Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193–96 (9th

---

[1] *See LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 950 (9th Cir. 2020) ("[f]ailure to respond meaningfully in an answering brief" results in waiver). The Court is mindful that Plaintiff is pro se and "must be treated with liberality." *Kocsis v. Delta Air Lines, Inc.*, 963 F. Supp. 2d 1002, 1011 (D. Haw. 2013) (citing *Waters v. Young,* 100 F.3d 1437, 1441 (9th Cir. 1996)).

Cir. 2001). "Exhaustion of administrative remedies is a 'condition precedent' to an ADA or Title VII action, and absent waiver or estoppel, failure to exhaust remedies is a ground for dismissal." *Barrett v. City of Milwaukee*, 2023 WL 4421577, at *1 (D. Ariz. July 10, 2023) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

Here, nothing suggests that Plaintiff ever filed a Title VII or ADA charge before the EEOC. Defendant avers, via a sworn declaration of counsel, that "Plaintiff [] never filed a Charge with the EEOC relating to the facts underlying her instant lawsuit[.]" *See* Dkt. # 34 ¶ 5. Plaintiff does not controvert this assertion. Her own sworn declaration contains no reference to any EEOC charge. *See* Dkt. # 36-1 at 61–62. Thus, the Title VII and ADA claims must be dismissed for failure to exhaust administrative remedies. *Cf. Burns v. White Pine Cnty.*, 2010 WL 11595124, at *7 (D. Nev. June 9, 2010) (granting summary judgment in part because the plaintiff "failed to provide evidence that could sustain their burden of showing that [a plaintiff] filed a timely claim with the EEOC."). It is true that the administrative exhaustion requirement for ADA and Title VII claims is prudential, rather than jurisdictional, and so that requirement can be excused. *See Zipes*, 455 U.S. at 393 ("a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court[.]"). Plaintiff makes no argument that any excusal is warranted, and the Court sees no basis to apply any of the equitable doctrines permitting excusal in these circumstances.

Moreover, to bring claims under Title VII or the ADA to the EEOC, a plaintiff must file a charge within 180 days of the alleged unlawful occurrence, or within 300 days if the plaintiff seeks recourse from a state antidiscrimination agency first. *See* 42 U.S.C. § 2000e-5(e)(1). Plaintiff has not alleged that any of the unlawful acts alleged in the complaint happened within

the last 300 days. Thus, Defendant is entitled to summary judgment on Plaintiff's federal claims.[2]

2. Plaintiff's state-law claims

Next, Defendant argues that Plaintiff's state-law claims (wrongful termination, retaliation, and discrimination/disparate treatment) require interpretation of the CBA applicable to her employment and are thus preempted by Section 301 of the Labor Management Relations Act (LMRA; also known as the Taft-Hartley Act), 29 U.S.C. § 185. *See* Dkt. # 33 at 8–13. Plaintiff does not respond to this point either, arguing instead that disputed facts make summary judgment inappropriate here. *See generally* Dkt. # 36.

Section 301 of the LMRA provides that

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185. "Although § 301 contains no express language of preemption, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019). The scope of this preemption is broad, going beyond suits alleging only contract violations. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–11 (1985); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962). As pertinent to this suit, the policy undergirding Section 301 requires that "[q]uestions relating to . . . what legal

[2] Accordingly, the Court does not consider Defendant's other arguments in favor of dismissal of Plaintiff's federal claims. *See* Dkt. # 33 at 13–14 (arguing that failure to exhaust CBA grievance procedures is a ground for dismissal of all claims); *id.* at 15–22 (arguing that Plaintiff cannot prove discrimination via disparate treatment, retaliation, or disability discrimination claims).

consequences were intended to flow from breaches of [a labor agreement] must be resolved by reference to uniform federal law." *Allis-Chalmers Corp.*, 471 U.S. at 211.

The Ninth Circuit employs a two-part test in evaluating preemption. *Curtis*, 913 F.3d at 1152. The first step asks whether the "asserted cause of action involves a right that exists solely as a result of the CBA." *Id.* "If the right exists solely as a result of the CBA, then the claim is preempted." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). If the right sought to be vindicated does not exist solely because of the CBA, the next step asks "'whether the plaintiff's state law right is substantially dependent on an analysis of [the CBA],' which turns on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA." *Curtis*, 913 F.3d at 1153 (citing *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2019)). Generally, "interpretation" is construed narrowly, essentially meaning that a state-law claim will not be preempted if it does not raise disputes about the "scope, meaning, or application" of the CBA. *Id.* (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124–25 (1994)). Defendant contends that Plaintiff's claims are preempted at both steps of the test. Dkt. # 33 at 8.

Here, Plaintiff's state-law claims all require interpretation of the CBA and are thus preempted by the LMRA.[3] Each of those claims—retaliation, wrongful termination, and discrimination and disparate treatment, and unfair application of policies[4]—depends on her contention that she was treated worse (disciplined and terminated) than another bus driver whose students also misbehaved on the same bus route. *See* Dkt. # 1-3 ¶ 9, 14–17; *see also* Dkt. # 34-1

---

[3] Defendant contends that Plaintiff's wrongful termination and state law disparate treatment claims seek to vindicate rights created solely by the CBA and are thus preempted by the first part of the *Curtis-Burnside* test. *See* Dkt. # 33 at 9–10. The Court disagrees, since Plaintiff asserts her termination claim on the basis of "public policy," not the CBA, and because her disparate treatment claim is couched in state law grounds. *See* Dkt. # 1-3 ¶¶ 18, 22. Further, Plaintiff did not claim that these rights arose from the CBA, and the complaint does not refer to the CBA. *See generally id.*

[4] But to the extent that Plaintiff's unfair application of policies claim seeks to vindicate rights that she possessed because of her employment, this claim *would* depend on her rights under the CBA that governed her employment and would thus be preempted at the first step of the test.

at 146:4–24 (at her deposition, Plaintiff saying that she was treated worse than the other bus driver, who is white, because she is "Black African American."). To evaluate whether she was treated worse, the Court must interpret whether Defendant's disciplinary actions against Plaintiff were in line with the CBA. The CBA at issue permits Defendant to terminate employees like Plaintiff outside the typical progressive discipline path if "severe circumstances" warrant it. *See* Dkt. # 35-1 at 9–10 (CBA art. 9, "Discipline"). The CBA provides 16 examples of severe circumstances, which Defendant cited in its termination letter to Plaintiff. *See* Dkt. # 34-6 at 2 (termination letter to Plaintiff citing CBA art. 9). In her official grievance form, Plaintiff also alleged that Defendant had violated Article 9 by disciplining and terminating her. *See* Dkt. # 35-7 at 3. The CBA must therefore be interpreted to see if Defendant complied with its article providing for discipline (i.e., Article 9), meaning that her state-law claims are preempted. *Cf. Rorebeck v. Franciscan Health*, 2019 WL 1436661, at *5 (W.D. Wash. Apr. 1, 2019) (dismissing WLAD claims as preempted because they "necessarily arise from and concern" the plaintiff's "employment relationship" and were covered by the CBA at issue); *Silva v. USF Reddaway Inc.*, 2017 WL 2117397, at *4 (N.D. Cal. May 15, 2017) (dismissing state-law claims preempted under the LMRA because they required determining whether CBA imposed an obligation on the defendant). Because preempted claims must be dismissed, *see Allis-Chalmers Corp.*, 471 U.S. at 220, Defendant is entitled to summary judgment on these claims too.[5] *Cf. Rodriquez v. Int'l Longshore & Warehouse Union Loc. 29*, 2009 WL 2575987, at *9 (S.D. Cal. Aug. 18, 2009) (granting summary judgment on claims as preempted by the LMRA).

---

[5] Accordingly, the Court need not reach Defendant's other arguments in favor of summary judgment. *See* Dkt. # 33 at 13–24.

## IV

## CONCLUSION

For the reasons above, the Court:

(1) GRANTS Defendant's motion for summary judgment (Dkt. # 33); and

(2) DISMISSES Plaintiff's Complaint (Dkt. # 1-3) and all claims therein with prejudice.

Dated this 14th day of August, 2026.

John H. Chun
United States District Judge